## THOMAS B. GRIGGS *vs.* JOSEPH B. MOORS.

Suffolk.   January 13, 1897. — May 20, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Guaranty — Construction of Contract — Dependent Stipulations — " Security "*
*— Condition Precedent — Waiver — Action — Defence — Estoppel.*

A. and B. executed an agreement, which recited that whereas A. held C.'s promis-
sory note, and, as security for its payment, held also a mortgage given by D. to
C. securing D.'s note, and A. had brought suit against C. on his note and at-
tached his property, and, at B.'s request and for his benefit, had filed a petition
in insolvency against C. and a bill in equity against C. and his grantee to set
aside a certain conveyance, in consideration thereof B. guaranteed to A. the
full payment, principal and interest, of C.'s debt to A., and also agreed to pay
A. the legal expenses and charges which he had incurred, and to assume and
pay all legal expenses and costs connected with the proceedings against C. above
mentioned; and it was further agreed that B. should have the benefit of the
security of A., and that B. should be entitled to an assignment of the security
at any time on paying to A. the full amount of his claims against C. and of all
disbursements and expenses incurred by him, and upon delivering to him an
agreement to indemnify him from all costs and expenses in any way growing
out of the legal proceedings above mentioned; and the agreement on A.'s part
was made subject to the right of C. to pay the note and require a re-assignment
of the security, or of the owners of the equity to pay the mortgage debt. *Held*,
in an action by A. against B. on the agreement, that the performance of the
guaranty by B. was dependent on the performance by A. of his agreement to
assign the security; and that the security was both the mortgage and note given
by D. to C.

The waiver of a provision in a written agreement which may be regarded as inde-
pendent does not affect the mutual and dependent character of other provisions
contained in the agreement.

If B., relying upon the security, signs an agreement, guaranteeing to A. the pay-
ment of C.'s note, secured by D.'s mortgage and note, A. agreeing to assign the
security to B. upon the performance of his undertaking, and if, at the time of
signing, D. has been released by A. from his liability upon the note, and B. is
ignorant of that fact, and it is not disclosed to him, and subsequently, having
discovered it, he declines to pay C.'s note on the ground that D. has been so
released, A. cannot maintain an action against him upon the guaranty; and B.
is not bound to notify A. that he does not consider himself liable because D.
has been released.

The fact that one party to an agreement containing mutual and dependent stipu-
lations has performed a substantive part of his contract, and will suffer loss
unless the other party, who has done nothing to mislead him respecting the per-
formance of his contract or to throw him off his guard, is held to his contract,
will not justify the court in turning a condition precedent into an independent
agreement, and in compelling the latter to resort to his claim for damages either
by way of recoupment or action.

CONTRACT, upon an agreement made by the plaintiff and the defendant on December 1, 1892, which recited that whereas the plaintiff was the holder of a promissory note for the sum of $10,000, made to him by John W. Candler of Brookline, dated February 6, 1887, and payable in three years from its date, and held, as security for the payment of the note, a certain mortgage given to Candler by Oramanda H. Drisko and Jacob Pearson, securing their note of $10,000, dated December 15, 1882, and had brought suit against Candler on his note, which was overdue and unpaid, and attached the property of Candler on the writ, and, at the request of the defendant and for his benefit, had filed a petition in insolvency against Candler, and a bill in equity against him and one David S. Baker, Jr., to set aside a certain conveyance made by Candler to Baker, in consideration thereof the defendant guaranteed to the plaintiff the full payment, principal and interest, of the debt of Candler to him, and also agreed to pay to the plaintiff the amount of his legal expenses and charges theretofore incurred growing out of his claim against Candler, and further agreed to assume and pay all legal expenses and costs in connection with the proceedings against Candler above mentioned, and to save the plaintiff harmless from any payment or expense on account thereof; and it was further agreed that the defendant should have the benefit of the security of the plaintiff, and should assume all risk that the plaintiff's right to avail himself thereof might be lost or impaired by reason of the proceedings against Candler above mentioned; and that, subject to the rights of Candler or those claiming under him, or the mortgagors or of those claiming under them, the defendant should be entitled to an assignment of the security at any time on paying to the plaintiff the full amount, principal and interest, of his claims against Candler and of all the disbursements and expenses incurred by him either by reason of legal proceedings or in the payment of taxes, or in any other way to protect his lien upon the premises, and also upon delivering to the plaintiff an agreement on his part to indemnify and save him harmless from all costs and expenses in any way growing out of the legal proceedings above mentioned, the defendant or those claiming under him giving to the plaintiff seven days written notice requesting such assignment; and the agreement

on the part of the plaintiff was made subject to the right of Candler or those claiming under him to pay his note and require a reassignment of the security, or of the owners of the equity to pay the mortgage debt. The declaration contained no reference to the indemnity as to future costs and expenses mentioned in the agreement.

The answer alleged that the defendant made the agreement with the plaintiff set forth in the declaration, relying upon the agreement of the plaintiff to transfer to him the note of Drisko and Pearson ; that the plaintiff, prior to the making of his agreement with the defendant, had released Drisko from further liability on the note, and had thereby become unable to perform his agreement with the defendant; and that the defendant, in consequence thereof, was released from his liability on the agreement.

Trial in this court, before *Knowlton,* J., who allowed a bill of exceptions, in substance as follows.

It appeared that the plaintiff was a farmer living in Brookline ; that in February, 1887, one John W. Candler, also a resident of Brookline, and who was reputed to own considerable real estate both in Norfolk and Suffolk Counties, and to be a person of means, borrowed of the plaintiff the sum of $10,000, and gave therefor his promissory note, and as security for the note indorsed to the plaintiff a mortgage note of A. H. Drisko and Company for $10,000, and assigned to the plaintiff the mortgage securing the note; that in the summer of 1892, the note given by Candler being overdue and unpaid, the plaintiff brought suit thereon and made an attachment of Candler's real estate in Suffolk and Norfolk Counties, which suit was duly entered in court, and was pending, and the attachment had not been discharged, in December, 1892; that the defendant was a resident of Boston, and had been for years a banker and dealer in exchange, and engaged in financial transactions in large amounts ; that about December 1, 1892, and prior thereto, he was also a creditor of Candler to a large amount; that just before that date Candler had made a conveyance of all his real estate to one Baker, his son in law, which was dated May 18, 1892, and was recorded June 28, 1892; that the defendant had learned that fact, and believed the conveyance to be a preference which

was void under the insolvent laws of this Commonwealth, and also believed it to be void as being in fraud of creditors, and feared that the creditors of Candler would be defrauded, unless a petition in insolvency against Candler and a bill in equity to set aside the conveyance were filed at once, but considered that for some reason such proceedings could be had to greater advantage to the creditors on some other claim than his own ; that after having inquired and learned of the plaintiff's claim and suit against Candler, the defendant negotiated with the plaintiff's attorney, endeavoring to have the plaintiff institute such proceedings, but the plaintiff refused to do this, preferring to rely on his suit and attachment; that thereupon the defendant proposed to guarantee the payment of the plaintiff's claim if such proceedings were instituted, and the plaintiff agreed to, and at the request of the defendant did, file a petition in insolvency against Candler on December 1, 1896, which alleged that "said mortgage is for the sum of $10,000, but the property covered thereby is not worth more than the sum of $7,000 to the best of your petitioner's knowledge and belief, so that your petitioner has a claim under said first mentioned note for an unsecured balance somewhere in the neighborhood of $3,000," and also on that day, at the request of the defendant, filed a bill in equity against Candler and Baker to set aside the conveyance, and thereupon the defendant and the plaintiff executed the agreement sued on ; and that, prior to the execution of such agreement, and before any negotiations between the parties, the plaintiff had received the sum of $400 on the mortgage note of Drisko and Company from Drisko, and on August 1, 1892, in consideration thereof, gave to Drisko an agreement, releasing him from all further liability on the note, which agreement was given with the approval and consent of all parties at that time interested.

The defendant, who was called as a witness by the plaintiff, testified that at the time he made the contract with the plaintiff he relied upon the ability of Drisko to pay the note ; that he did not at that time have any information that Drisko had been released, or that any agreement had been made by the plaintiff with him about his liability; and that he did not know how long it was after the agreement with the plaintiff that he first

learned of the release, but he should say it was " several weeks, possibly." He also testified that he relied on the note.

It also appeared that the plaintiff and the defendant had never met or had any correspondence before the trial; and that all the negotiations were carried on through the plaintiff's attorney, Mr. Carret, who testified that, at the time the agreement in suit was made, he was acting for the plaintiff, and the matter was first brought to his attention on November 28, 1892, by the defendant's attorney; that prior to the signing of the agreement he had talked with the defendant about the matter, and explained to him that the security was not considered good for the amount of the claim, and that they did not look to the Drisko note as good, but looked to the security, and considered that insufficient; that the bill in equity against Baker and the petition in insolvency against Candler were prepared at the request of the defendant or his counsel; that he was acting in association with the defendant's counsel, and had conferences with them about the proceedings; that before the agreement was signed, the defendant came to his office one or more times about this matter, and so had his counsel; that at that time the various notes and papers were in his office with the indorsements on them; that he could not say that the defendant or his counsel saw them or asked to see them, but that there was no difficulty in their seeing them if they had asked to, and the papers were in no way withheld; and that, at the time the agreement was made, he had not in his mind the agreement with Drisko, and made no reference to it, and had at no time previously informed the defendant or his counsel of it.

Mr. Carret also testified that, prior to the making of the agreement of December 1, 1892, the defendant proposed to him a different agreement with regard to this same affair; and the plaintiff's counsel then asked him whether, in that agreement, the question of arrears of interest on the mortgage note was discussed with the defendant. On the defendant's objection, the judge refused to allow this question; and the plaintiff excepted.

There was evidence tending to show a demand upon the defendant, on behalf of the plaintiff, for the payment of the note and performance of the agreement, and a readiness on the part

of the plaintiff to perform his part of the agreement, and an ability so to do, unless the agreement with Drisko disabled him from so doing. There was no evidence that the defendant had ever made any demand or request for a conveyance or assignment of any of the security described in the agreement sued on, or of any rescission of the contract by the defendant, or of any payment of the plaintiff's expenses. Evidence was offered by the plaintiff as to the legal and other expenses incurred by him in regard to the insolvency and equity proceedings, and under the agreement.

There was no other evidence that the defendant, prior to making the agreement in suit, had any information that Drisko had been discharged from his liability upon the note of O. H. Drisko and Company held by the plaintiff; but there was evidence tending to show that, prior to the bringing of the action, the defendant notified the plaintiff or his attorney that, in consequence of the plaintiff having made an agreement with Drisko discharging him from liability, the defendant did not consider himself liable on the contract.

At the close of the plaintiff's evidence, the defendant's counsel moved that a verdict be directed for the defendant. After hearing arguments on this motion, the judge stated that he should rule, in substance, " that, if the defendant signed this agreement relying upon a note as a part of that security, a note upon which Drisko was a party signing it, and if at the time Drisko had been discharged from his liability upon that note, and the defendant was ignorant of that fact, and it was not disclosed to him at the time of the transaction, and he subsequently, upon discovering that, declined to pay the Candler note on the ground that Drisko had been released from his liability and that the plaintiff could no longer perform that stipulation contained in the agreement, — this plaintiff cannot recover under those circumstances."

He then inquired of the plaintiff's counsel whether, under this ruling, there was any question of fact on which he desired to go to the jury, to which the counsel replied that there were two questions of fact which he considered open under the rulings, and which he desired to have presented to the jury; first, whether the defendant was informed as to the discharge; and secondly,

whether he entered into the agreement relying upon the note and the signatures to it referred to in the agreement as part of the security. The judge thereupon declined to submit these questions to the jury, and directed them to return a verdict for the defendant; and the plaintiff alleged exceptions.

*H. W. Chaplin,* for the plaintiff.

*R. M. Morse,* (*L. Bass, Jr.* with him,) for the defendant.

MORTON, J. The first question is whether the performance of his guaranty by the defendant was dependent on the performance by the plaintiff of his agreement to transfer and assign the security, and we think that it was. Whether stipulations in a contract are dependent, so that neither party can call upon the other to perform unless he is able and willing to perform himself, or whether they are independent, so that the remedy for non-performance is by action only, depends on the sense of the contract as a whole, and the intention of the parties as thus ascertained. *Knight* v. *New England Worsted Co.* 2 Cush. 271, 286. *Howland* v. *Leach,* 11 Pick. 151, 154.

In the present case the defendant guaranteed to the plaintiff the full payment, principal and interest, of what Candler owed him, and he also agreed to pay the plaintiff the legal expenses and charges which he had incurred, and to further assume and pay all legal expenses and costs connected with the petition in insolvency against Candler, and the bill in equity against him and Baker to set aside the conveyance which Candler had made to Baker. The plaintiff agreed that the defendant should have the benefit of the security which he had received from Candler, and that on the defendant's paying to the plaintiff the full amount due him from Candler and all disbursements and expenses, and delivering to him an agreement to save him harmless from all costs and expenses in any way growing out of the legal proceedings referred to above, he would assign to him the security ; the agreement on his part being subject, however, to the right of Candler to pay his note and require a reassignment of the security, or of the owners of the equity to pay the mortgage debt. We think that these constitute mutual and dependent agreements. The defendant is not entitled to an assignment of the security until he has paid the claim against Candler and the costs, and given the indemnity provided for, and the plaintiff

cannot compel the defendant to do this until and unless he is able and ready to assign the security. In other words, performance by one is conditioned upon and subject to performance by the other. This renders the agreements mutual and dependent. *Johnson* v. *Reed*, 9 Mass. 78. *Dana* v. *King*, 2 Pick. 155. *Hunt* v. *Livermore*, 5 Pick. 395. *Cadwell* v. *Blake*, 6 Gray, 402. *Phillips* v. *Soule*, 9 Gray, 233.

The plaintiff appears to have waived the written indemnity as to future costs and expenses. This he could do. But his waiver in regard to that does not affect the mutual and dependent character of other provisions contained in the agreement. Moreover, it is possible for some provisions to be mutual and dependent, and for others in the same agreement to be independent. *Couch* v. *Ingersoll*, 2 Pick. 292. *Kane* v. *Hood*, 13 Pick. 281. *Knight* v. *New England Worsted Co.* 2 Cush. 271. If therefore the provision in regard to future costs and expenses be regarded as independent, those relating to the payment of the Candler note and accrued costs and expenses, and to the assignment of the security, would still be mutual and dependent.

The security referred to is, we think, the mortgage deed and note. As between the original parties, the deed and note were one security. There is nothing to show any separation in dealing with them. The plain implication of the agreement is that Candler assigned both, and that the plaintiff had both. As matter of law, upon payment to the plaintiff of the Candler note, the defendant would have been entitled to the security accompanying it. There is no intention manifested in the agreement to cut down his rights in this respect. On the contrary, they are fully recognized and protected. These considerations derive force from the fact that the agreement provides for the contingency of the payment of the mortgage debt by the owners of the equity. Under the circumstances, therefore, we do not see how the meaning of the word " security " can be restricted to mortgage deeds alone.

At the trial it was uncontroverted that, some months before the agreement was entered into, the plaintiff had released one of the makers of the note. The defendant testified that he did not know this when he signed the agreement, though he was informed of it not very long after; " several weeks, possibly," he

says. He also testified that he relied on the maker who had been released, and on the note. He did not contend that he was induced to execute the agreement by any fraud or misrepresentation on the part of the plaintiff, but that the failure to communicate the information was due to inadvertence or mistake on the plaintiff's part. On these facts the case presented would be one of mistake in an essential particular regarding the property which was to be assigned to the defendant on his paying to the plaintiff the Candler note and the accrued costs and charges, and the agreement would not therefore be binding on him. *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80. Benjamin on Sales, (6th ed.) §§ 50, 51. In consequence of the release of Drisko, there was no such note in existence as that which was referred to in the agreement, and which the plaintiff was to assign to the defendant. What the result would have been if the defendant had guaranteed the payment of the Drisko note, we need not now consider. See *Veazie* v. *Willis*, 6 Gray, 90; *Jones* v. *Thayer*, 12 Gray, 443.

The plaintiff contends that there was evidence which would have warranted the jury in finding that the defendant knew of the release and that the entire transaction was based on the worthlessness of the mortgage note as personal security, that the defendant should have notified the plaintiff, upon hearing of the release, that he intended to rely upon that fact, and that the defendant, having received a substantial part of the consideration, should perform his guaranty, looking to the plaintiff for such damages either by way of recoupment or action as he has sustained by any particular breach by the plaintiff of his agreement.

We do not think that either one of these contentions is sound.

Mr. Carret testified that, though the notes and papers were in his office, and were not withheld, and the defendant and his counsel were there one or more times in reference to the matter, and could have seen them if they had wanted to, he could not say that they saw them, and "that at the time the agreement was made he had not in his mind the agreement with Drisko, and made no reference to it, and had at no time previously informed the defendant or his counsel of it." He also testified that he told the defendant "that they did not look to the Drisko note as good, but looked to the security, and considered that insufficient."

There was no testimony to control this, and manifestly it did not show, and had no tendency to show, that the defendant knew of the release before the agreement was signed, or that he regarded the mortgage note as worthless as personal security. Even if we assume that the bill in equity and the petition in insolvency are to be considered in connection with the agreement as forming one transaction, there is no allegation in either that Drisko had been released, or that the mortgage note was worthless as personal security, and it is not shown that the defendant had in fact any knowledge of their contents. Even if he had, it does not follow from the allegation that the security, meaning the land, was not worth more than $7,000, and that there was a balance of about $3,000, that the personal security of the parties to the mortgage note was regarded as worthless. The allegation only means that there was a balance of about $3,000 over and above the security due on the note as against Candler, not that nobody else was liable on the note, or that if there was anybody else liable the security afforded thereby was worthless, and was so regarded.

The plaintiff gave up his attachment on Candler's property, and filed a petition in insolvency against him, and also a bill in equity against him and Baker to set aside the conveyance to the latter. He has performed a substantial part of his agreement, if, indeed, he has not done all that he agreed to do except assign the security. But so far as appears, this was all done before the defendant learned that Drisko had been released. The defendant has not therefore received and accepted performance on the plaintiff's part under such circumstances as to show that he knew or must have known that the plaintiff was unable fully to perform his agreement to assign the security. He has done nothing to mislead the plaintiff respecting the performance of his contract, or to throw him off his guard. The fact that the plaintiff has performed a substantive part of his contract, and will suffer loss, will not justify us in turning a condition precedent into an independent agreement, and in compelling the defendant to resort to his claim for damages either by way of recoupment or action. It must often happen in contracts imposing conditions precedent that, if a party fails to perform, the *status quo* cannot be restored. But parties have a right to make their contracts as they see fit, and in the absence of acts or conduct which would

render it unjust or unfair for a party to take advantage of a condition precedent, we think that he is entitled to stand on the contract as made. *Wiley* v. *Athol,* 150 Mass. 426. *Norrington* v. *Wright,* 115 U. S. 188. *Bowes* v. *Shand,* 2 App. Cas. 455. *King Philip Mills* v. *Slater,* 12 R. I. 82. If the continued liability of Drisko was a matter of trifling importance, and it was apparent from the agreement that it was so regarded by the parties, it may be that the defendant would not be allowed to defeat the plaintiff by setting up the Drisko release. But we find nothing in the agreement looked at by itself, or in the light of surrounding circumstances, which fairly would justify such a conclusion.

The defendant was not bound to notify the plaintiff that he did not consider himself liable because Drisko had been released. He well might wait till the plaintiff took steps to enforce the guaranty. Even if the defendant were bound to give such notice, there is nothing to show that for want of notice the plaintiff did anything which he would not have done, or failed to do anything which he would have done. The doctrine of waiver or estoppel does not therefore apply. The plaintiff has not argued the exception as to the admission of testimony, and we therefore treat it as waived.        *Exceptions overruled.*