[S. F. No. 12623. In Bank.—October 30, 1929.]

MARIE A. MUSTO, Plaintiff and Appellant, v. C. E. GROSJEAN et al., Defendants and Appellants.

George Clark Sargent and Aaron M. Sargent for Defendants and Appellants.

Alexander McCulloch and C. J. Goodell for Plaintiff and Appellant.

Robert H. Borland for Defendants E. W. Newell and Allene B. Newell.

Louis Ferrari, J. J. Posner, C. H. White and Young & Hudson, *Amici Curiae*.

THE COURT.—Plaintiff brought this action to foreclose a purchase-money mortgage.

On March 8, 1919, E. W. Newell entered into a written contract for the sale to the defendant C. E. Grosjean, of a tract of unimproved land in the Islais Creek district in San Francisco for a total purchase price of $135,000, payable $15,000 in cash and the balance by promissory notes (including the note in suit for $60,000), due in five years and two months from the date of the contract with interest at the rate of six per cent per annum payable monthly, secured by first and second mortgages on the tract so contracted to be sold. The contract of sale provided that the vendor, Newell, should prior to May 10, 1919, perform or cause to be performed certain conditions precedent which consisted of procuring the city and county of San Francisco to alter and extend Tulare

Street and abandon another street, as specified in the contract; and that the vendor would grant to the state of California a strip of land for the purpose of enabling the state to enlarge the wharfage facilities for said tract. The conditions precedent mentioned were performed, the cash payment of $15,000 was made, title delivered and the notes and mortgages executed in accordance with the terms of the contract. Payment of the note in suit was secured by the second mortgage mentioned in the contract of sale.

By paragraph six thereof the contract of sale further provided that the vendor should grade and pave certain streets surrounding said tract; grade and fill said tract with earth and rock to one foot above city base; and obtain a permit for and construct a railway spur-track on said property, all at his own cost and expense. The contract contained the following provision: "The work above mentioned shall all be commenced not later than June 15, 1919, and shall be fully completed not later than December 15, 1919. In case the first party fails to fulfill the provisions of this paragraph 6, the second party shall have and he is hereby granted the right to do or to cause said work to be done and to credit and apply the cost thereof as a payment on account of the amount of the indebtedness on the promissory note secured to be paid by the mortgage hereinabove referred to as the second mortgage, or to otherwise recover the cost of said work from the first party; . . . " Paragraph five of said contract provided in part: "Reference shall be made in said second mortgage to the promises and agreements of the first party set forth in the sixth paragraph hereof respecting the grading, paving and railway spur track construction work described in said paragraph, and to the provisions of said paragraph respecting the right of the second party to do or cause said work to be done in case of the failure of the first party to fulfill said promises, and to credit and apply the cost thereof . . . as payments on account of the amount of the indebtedness on the promissory note secured to be paid by said second mortgage, in order that any owner or holder of said note and mortgage may be charged with knowledge of the provisions of said paragraph." All of the above agreements and provisions of the contract of sale were recited in said second mortgage, and said mortgage contained the agreement of the mortgagee "for and on behalf of himself, his heirs, legal

representatives, assigns, and all persons who may have or claim any interest through him or them in this mortgage, or any renewal or extension thereof, that in case the mortgagee fails to fulfill the said promises and agreements, and the mortgagors, or either of them, or the heirs, legal representatives or assigns of the mortgagors, or either of them, do or cause said work to be done, they may credit and apply the cost thereof as a payment on account of the amount of the indebtedness secured to be paid by this mortgage or any renewal or extension thereof, or they may, at their election, otherwise recover the cost of said work from the mortgagee, his heirs, legal representatives or assigns; . . . "

The vendor and mortgagee, E. W. Newell, assigned said note and second mortgage to S. W. Newell, who in turn assigned said note and mortgage to the plaintiff, Marie A. Musto, who brought this action. The defendant, Ellen S. M. Grosjean, joined in said mortgage, and was joined in this action, as the wife of the defendant, C. E. Grosjean.

The action was resisted by the defendants Grosjean on the ground that the covenants and conditions of said mortgage had not been fully kept and performed. The defendants sought to recover by way of cross-action damages including the cost of completing the work provided for by the contract and the mortgage. The trial court found that the principal sum of $60,000 with interest from January 31, 1921, together with $600 attorney fees, was due to the plaintiff; that the note and mortgage sued on and the contract of March 8, 1919, were parts of the same transaction and that the conditions and covenants of paragraph 6 of the contract of sale were a part of the consideration moving to C. E. Grosjean; that none of the work agreed to be done was done on the fifteenth day of December, 1919, but that a portion thereof was performed thereafter; that the only damage suffered by the defendants Grosjean was the reasonable cost of completing said work which the court found to be the sum of $21,573.63, and which was allowed as a deduction from the sum found to be due to plaintiff. Foreclosure was decreed accordingly.

Cross-appeals were taken from the judgment—by the plaintiff and her predecessors in interest, who were made defendants in the action, from that portion of the judgment which awarded damages to the defendants Grosjean, and by the defendants Grosjean from the whole judgment and from

the order of the trial court denying defendants' motion to vacate the judgment and grant a new trial.

It is claimed by the appellants Grosjean that the plaintiff's predecessors in interest, not having performed the stipulated conditions precedent, are in default and cannot therefore prove performance as a condition of recovery in the action. The appellant Musto contends that the obligation to do the work was independent of the obligation to pay the note and therefore was not a condition precedent to the right to foreclose the mortgage; and, furthermore, that the defendants Grosjean are not entitled to a deduction from the principal sum for the reason that the contract provides that such deduction may be made only in the event that Grosjean himself perform the work or cause it to be done, neither of which events ever transpired.

The note sued on in the present action contains the following: "This note is secured by a mortgage of even date herewith, and is subject to the provisions of said mortgage, respecting the credits or allowances to be made on this note in the cases provided for in said mortgage, as fully as if said provisions were set forth in this note." It is not questioned, therefore, that the note is not a negotiable instrument, but rather is subject in the hands of an assignee to any set-off or other defense existing in favor of the defendants Grosjean. (See *Meyer* v. *Weber*, 133 Cal. 681, 685 [65 Pac. 1110]; *Briggs* v. *Crawford*, 162 Cal. 124, 129 [121 Pac. 381]; *National Hardware Co.* v. *Sherwood*, 165 Cal. 1, 7 [130 Pac. 881]; *Taylor* v. *Jones*, 165 Cal. 108 [131 Pac. 114].) Irrespective of any fundamental rule, it is plain that the parties specifically provided that the note and mortgage in the hands of an assignee thereof should be subject to any set-off or deduction which the maker might properly claim by virtue of the provisions respecting the making of the improvements by the mortgagee contained in the contract and in the mortgage. The trial court therefore correctly concluded that the contract and the note and mortgage sued on were parts of the same transaction.

It must be determined then, first, whether nonperformance of the conditions and promises contained in paragraph 6 of the contract which are recited in the mortgage precludes the right to recover on the note and mortgage; and, if the answer is in the negative, second, whether the defendants Grosjean

may in this action claim a deduction for the cost of the work not performed by the plaintiff's assignor.

Did the parties to the contract and the mortgage intend that performance of the work specified should be a condition precedent to a recovery on the note and mortgage? The parties to this controversy and *amici curiae* have cited numerous authorities and have referred us to much legal lore on the subject of conditions precedent and covenants dependent and independent. ▮ While ordinarily the order of time in which covenants are to be performed prevails and is controlling as to the mutual rights and obligations of the parties (see 13 C. J., p. 568), and failure to fulfill a condition or promise made or given as part of the consideration for the mortgage may preclude the right of the mortgagee · to a recovery (see 41 C. J., p. 876), nevertheless the courts in modern times, rather than attempting to arrive at finely drawn distinctions based on the particular forms of expression used by the parties, have applied the test of intent as gathered from the common sense of the entire contract, limited necessarily by the rule that courts cannot make a new or different contract for the parties, but must be guided by what the parties actually contracted to do. (See *Roach* v. *Dickinson,* 9 Gratt. (50 Va.) 154, 156; *Allemong* v. *Augusta Nat. Bank,* 103 Va. 243 [48 S. E. 897]; *McCormick* v. *Badham,* 191 Ala. 339, 343 [67 South. 609]; *Griggs* v. *Moors,* 168 Mass. 354 [47 N. E. 128, 129]; *Mill Dam Foundry* v. *Hovey,* 21 Pick. (38 Mass.) 417, pp. 438, 439; *Pacific Mill Co.* v. *Inman, Poulsen & Co.,* 46 Or. 352 [80 Pac. 424, 427]; *Loud* v. *Pomona Land etc. Co.,* 153 U. S. 564, 576 [38 L. Ed. 822, 14 Sup. Ct. Rep. 928]; *Union Pac. Ry. Co.* v. *Travelers' Ins. Co.,* 83 Fed. 676 [28 C. C. A. 1].) It has been well stated in *Roach* v. *Dickinson, supra* (p. 156 of 9 Gratt.) : ''There is perhaps no branch of the law in which is to be found a larger number of decisions or a greater apparent conflict of authorities than that in which the effort has been made to define the dependence and independence of covenants, and to designate the class to which any given case in dispute is to be referred. The great effort, however, in the more recent decisions, has been to discard, as far as possible, all rules of construction founded on nice and artificial reasoning, and to make the meaning and intention of the parties, collected from all the parts of the instrument rather

than from a few technical expressions, the guide in determining the character and force of their respective undertakings.''

In the present case the parties contracted that the mortgagee should have his lien for whatever balance of the principal sum there might be after deducting the cost to the mortgagors of making the improvements to the tract should the mortgagee fail to perform and the mortgagors themselves cause and pay for the doing of the work. Undoubtedly the parties estimated that the cost of the work at the most would not exceed the principal sum of the second mortgage and it was therefore only that mortgage in which were incorporated the provisions of paragraph six of the contract of sale. Plainly, the improvements to be made by the mortgagee, or the deduction from the principal sum of the cost thereof to the mortgagors, were a part of the consideration for the note and mortgage. By providing for such an alternative, however, it would seem that the parties contemplated that the mortgagee should have his lien even though the mortgagee defaulted, and that in that event there should be credited on the principal sum the cost to the mortgagors of completing the work. Of course, there is no promise of the mortgagors to make the improvements in the event the mortgagee fails to perform. They have that privilege, which they may exercise or not. The fact that they do not do so, however, does not permit the mortgagee to have his recovery without complying with the clear intention that the mortgagors should receive a credit for the cost of completing the work should the mortgagee default. In other words, the breach by the mortgagee does not preclude the right of the mortgagors to receive from the mortgagee the promised consideration or its equivalent before the mortgagee may pursue his recovery for the default of the mortgagors. The parties have, by their contract, themselves suggested an equivalent, or, in other words, a measure of damages for the partial failure of consideration, viz., the cost of completing the stipulated improvements. That provision in their contract makes it apparent that the parties did not intend performance by the mortgagee to be a condition precedent to any recovery by him, but that the intent was that the mortgagors could adequately be compensated for the mortgagee's breach by a credit for the cost of completing the work. We conclude therefore that the parties intended that the mortgagee should

have his lien even though he failed to perform the promise to make the improvements, but that at all events the mortgagors were to have credit on the principal sum for the cost of the uncompleted work. The trial court's judgment and decree in accordance with the foregoing was therefore proper.

A further question is presented as to whether the trial court properly concluded that interest at six per cent on the principal sum of the note and mortgage from January 31, 1921, was due to the plaintiff. The last payment of interest under the mortgage was made by the defendants Grosjean on January 31, 1921. On March 31, 1921, the mortgagee, who was then in default as to the improvements to be made, wrote a letter to C. E. Grosjean wherein he agreed ''that the payment of the interest now unpaid and the interest accruing on your promissory note . . . for . . . $60,000, pending the completion of the work, shall be postponed and not be payable by you until this work is completed by me; that the nonpayment of said interest by you pending the completion of the work shall not constitute a default on your part in respect to the interest provided in said note to be paid; . . . Nothing herein shall be construed to deprive you of your right under the agreement dated March 8, 1919, to do or cause said work to be done at any time, and to exercise all other rights in regard thereto given to you in said agreement.'' It is contended by the appellants Grosjean that the improvements not having been made or completed by the mortgagee, interest was not payable at all. It must be noted from the writing last hereinabove quoted that payment of the interest was not excused but was merely postponed until the improvements should be completed. The statement by Newell that Grosjean still had the right to complete the work himself, etc., indicates clearly that it was within the contemplation of the parties only that payment of interest should be postponed until either the work was completed by the mortgagee or the equivalent of that portion of the consideration was received by the mortgagors. The postponed interest therefore became payable at the time judgment was awarded in favor of the mortgagors.

We are of the opinion, however, that the trial court erred in awarding interest to the plaintiff on the entire principal sum of the mortgage without first deducting the sum which it awarded to the defendants Grosjean. It is

claimed that to make the deduction before computing the interest is in effect to award interest to the defendants Grosjean on damages which were unliquidated and not capable of being made certain by calculation within the meaning of section 3287 of the Civil Code. Whether or not the sum awarded as a reduction and which represents the cost to the mortgagors of completing the stipulated improvements be liquidated or unliquidated damages, we are of the opinion that to make the deduction at the date of the judgment is to allow the mortgagee double interest on the sum which he should have expended for the mortgagors' benefit at a much earlier date, while to make the deduction from the principal sum before computing the interest has the effect only of awarding to the defendants what is their due under the terms of the contract. The mortgagors were entitled to receive that sum from the mortgagee at the earlier date either in the form of improvements to the land or as a credit on the principal sum of the note and mortgage, as a part of the consideration therefor. In such a situation it is not necessary to determine whether the "damages" are liquidated or unliquidated. It is inconceivable that the mortgagee should be permitted to default at a profit to himself. The situation is the same as though a mortgagee had failed to advance a part of the principal sum contracted for by the terms of the mortgage and then claimed interest on the entire principal sum. In such a case he would not be entitled to recover interest on the portion of the consideration which he retained in his own hands. We think, however, that the acceptance by Grosjean of the agreement to postpone payment of interest constituted a waiver on the part of the mortgagors of the default of the mortgagee to the date thereof, and that interest should be computed on the basis of the full sum of the principal to March 31, 1921, and thereafter on the basis of the principal sum of the note and mortgage less the amount awarded to the defendants Grosjean as the cost of making the improvements.

It is also claimed that the plaintiff was not entitled to judgment for attorneys' fees. The defendant C. E. Grosjean died after the commencement of the action and subsequently the plaintiff filed a supplemental complaint alleging that fact and the appointment of the defendant Ellen S. M. Grosjean, as administratrix with the will annexed of the

estate of C. E. Grosjean, and waiving recourse against any property of the estate with the exception of the property in suit. The plaintiff did not, however, file a claim against the estate of C. E. Grosjean for attorneys' fees in this action. The claim for attorneys' fees is, therefore, barred by the provisions of section 1500 of the Code of Civil Procedure.

No other points require discussion.

The judgment is modified by omitting therefrom the allowance of $600 counsel fees and by making the deduction therefrom of said sum of $21,753.63 as of March 31, 1921, instead of as of the date of the judgment. As so modified the judgment is affirmed.

The appeal of the defendants Grosjean from the order denying their motion to vacate the judgment and for a new trial is dismissed, the same being an appeal from a non-appealable order.

All the Justices concurred.