Presented on this appeal is a dispute between landlords and tenant as to the meaning of certain language controlling the reconstruction of the Roxie Theater building situated in the City of Miami in the event of its loss or damage by fire. The lease was for a period of ninety-nine years and entered into during the year 1938. The terms of the lease have been observed by the parties without default in the payment of rents. The lease in part provided that in the event of loss or damage by fire the tenant was required to begin reconstruction of such loss or damage to the building within a four months' period after the fire. On May 13, 1945, the Roxie Theater building was badly damaged by fire, which occurred at a time when our country was at war with other nations and the war measures adopted by the Federal government precluded *Page 221 
reconstruction work on such buildings as the Roxie Theater building.
Accordingly the landlords and tenant by agreement amended the fire provision of their original ninety-nine year lease — our entry into the war with other nations was not contemplated by the parties in 1938. The amended portion of the lease applicable to the reconstruction work caused by fire entered into between the parties in the Summer of 1943 is the sole controversy here. The tenant filed suit against the landlords under Section 87.01, Fla. Stats. 1941 (FSA), and from a decree favorable to it an appeal has been perfected here. The amended portion of the lease applicable to reconstruction work on the Roxie Theater building caused by fire is viz:
"With respect to the lease or leases between us affecting the southerly ninety-five feet of Lots No. 19 and 20 of Block No. 122 North of the City of Miami, Florida, and the northerly twenty-five feet of said lots, and with particular reference to the damage by fire which recently occurred to the buildings, we hereby agree with you that notwithstanding the provisions of the lease or leases pertaining to reconstruction of the buildings thereon in the event same were damaged or destroyed by fire or windstorm, and the time such rebuilding must be effected, you may, if you wish, because of the present governmental restrictions prohibiting or limiting the erection of new buildings, replace any damaged or destroyed structures with a temporary structure one story in height, or may so repair the damaged structures as to leave a structure of a temporary nature only, one story in height, and we hereby waive the requirements of said lease that you must start any such work within a period of four months after the date of such damage or destruction, and we hereby extend your time to commence such reconstruction or repairs or to commence the erection of such new building as is required under the provisions of the aforesaid lease until one year after the removal of all governmental restrictions prohibiting or limiting the erection of new buildings to contain retail stores or businesses, and agree that you shall have a reasonable time to complete same after the work of construction or repairs has been commenced." *Page 222 
In construing the extension agreement, supra, counsel, for appellants (landlords) contend for the following interpretation: (1) the government construction limitation was removed on October 15, 1945; (2) the one year period provided for in the extension agreement expired October 15, 1946; (3) the tenant by this agreement was to begin the reconstruction work within one year after October 15, 1945; (4) the lease is invalid because the reconstruction work was not started by the tenant within the one year period; (5) the return of the building restriction by the government order on March 26, 1946, is wholly inapplicable to the extension agreement of the parties; (6) it would be a strained construction to conclude that the one "one year after the removal of all government restrictions" recited in the extension agreement means one yearafter the last restriction is removed; (7) the one year period is definitely fixed as after October 15, 1945, and Chancellor erred in not so holding.
Counsel for appellee contends for the following interpretation of the aforesaid extension agreement: The plaintiff below (tenant) is required to begin the reconstruction or repair of the Roxie Theater building as damaged or injured by fire during the month of May, 1945, at the expiration of the full period of one continuous year from and after that date or occasion when the Federal Government by appropriate order shall cancel or otherwise remove all governmental restrictions on building or construction.
It is true, as emphasized by counsel for appellants, that courts are powerless to rewrite contracts or interfere with the freedom of contracts or substitute its judgment for that of parties to the contract in order to relieve one of the parties from apparent hardships of an improvident bargain. The record here fails to disclose dissatisfaction as between the parties with the terms, conditions or provisions of the lease other than a disagreement on the meaning of the foregoing extension agreement. If the construction contended for by the appellants is sustained, then the conclusion reached is that the tenant failed to live up to the terms of the lease and the same is invalid and costly forfeitures are inevitable. If the construction contended for by the appellee is sustained, then *Page 223 
no injuries or losses occur to any one as the lease in other particulars has not been breached.
The case of Florida Power Corp. v. City of Tallahassee,154 Fla. 638, 18 So.2d 671, involved the construction or interpretation of different clauses in a contract and we, in part, said:
"If clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible. If one interpretation would lead to an absurd conclusion, then such interpretation should be abandoned and the one adopted which would be in accord with reason and probability. See Hull v. Burr, 58 Fla. 432, 50 So. 754. If the language of a contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary, and such as a prudent man would naturally execute, while the other interpretation would make it unequitable, unnatural, or such as a reasonable man would not be likely to enter into, then the reasonable, logical and rational interpretation should be adopted. See Holmes v. Kilgore, 89 Fla. 194, 103 So. 825; Ross v. Savage, 66 Fla. 106,63 So. 148; Durham Tropical Land Corp. v. Sun Garden Sales Co.,106 Fla. 429, 138 So. 21, 143 So. 758. . . ."
We fail to find error in the record.
Affirmed.
THOMAS, C. J., TERRELL and ADAMS, JJ., concur.