147 So.2d 167 (1962)
Florence C. SHELDON, Appellant,
v.
J. William TIERNAN, As Trustee, J. William Tiernan, Individually, and East Atlantic Corp., a Florida Corporation, Appellees.
No. 3230.
District Court of Appeal of Florida. Second District.
November 14, 1962.
Charles Byron, Delray Beach, for appellant.
C. Robert Burns, Palm Beach, for appellees.
PER CURIAM.
Florence C. Sheldon, plaintiff below, seeks reversal of a summary final decree *168 entered for the defendants in a suit involving a 99-year lease. The plaintiff-lessor alleged certain defaults on the part of the defendant-lessee, J. William Tiernan, and complained that said lessee thereafter made a sham assignment to a dummy corporation in an attempt to avoid liability. Plaintiff prayed that the assignment be set aside and that she be awarded damages.
Florence C. Sheldon on February 13, 1959, by instrument under seal, leased certain real property to J. William Tiernan, "as trustee", for a period of 99 years. The lessee agreed (a) to pay annual rental in the sum of $7,000.00, (b) to pay the taxes, (c) to construct on the leased property a building costing not less than $175,000.00 commencing not later than January 31, 1961 and (d) to pay court costs and fees incurred by the lessor in the event of lessee's default. There was on record no pertinent declaration of trust, and it appears that the words "as trustee" are surplusage and have no legal effect on the relationship of the parties. See McMullen v. McMullen, Fla. App. 2nd District, 1962, 145 So.2d 568, opinion filed October 12, 1962, and authorities there cited.
J. William Tiernan paid the rent for 1959 and 1960 and the taxes for 1959. He defaulted on taxes for 1960 and 1961 and the rent for 1961 and never commenced construction of the building although he demolished a frame structure located on the leased premises. On February 20, 1961, being delinquent under the lease, he caused to be issued a certificate of incorporation of East Atlantic Corporation. The subscribers were J. William Tiernan 500 shares, Carl Gezelschap 499 shares and Ruth Kelly, who apparently was a secretary, 1 share. J. William Tiernan immediately executed an assignment to the new corporation and the assignment contained an agreement by which the corporation assumed the terms, conditions and covenants of the lease and agreed to perform them. Article X of the lease made it freely assignable, but no assignment would be valid unless the assignee assumed the lease convenants and unless the assignment were executed in such manner and form as to entitle it to recordation and unless it were promptly filed for record and an executed original delivered to the lessor. The assignment article of the lease included also the following:
"Article X (c) The obligations assumed hereunder by the respective sides (Lessor of the one side and Lessee of the other side) are all covenants running with the land and they shall pass successively, upon the occasion of such transfer or assignment of an interest, unto the transferee or assignee and upon the occasion of each such transfer or assignment the transferor or assignor shall be thenceforth released from any liability thereunder." (Emphasis supplied)
In view of the lessee's covenant to construct a building on the leased property, such liberal privilege of assignment would seem to be highly improvident from the standpoint of the lessor; but in the absence of fraud or other illegality the provision is valid. It may be construed but not evaded.
There appears from the record no evidence as to whether the conditions precedent to an assignment were actually met. The record indicates affirmatively that the summary decree under review was entered ex mero motu at a time when there was pending no motion for summary decree. Without minimizing such omission and irregularity, we now determine what we conceive to be the prime question presented on this appeal, viz.,  whether the summary decree reflects a correct interpretation of the assignment article of the lease.
The chancellor construed Article X(c), quoted supra, and was of the opinion that under the language there employed all liability of the lessee which had previously accrued, as well as all future liability on his part, was extinguished by the assignment of his interest to the corporation, which corporation the chancellor found to be not the *169 alter ego of the lessee. The chancellor was of the opinion that
"* * * [U]nder the language of the lease, `thenceforth' refers to the time in which the release from liability becomes effective, and the type of liability which is effected is defined by the word `any'. There appears to be no ambiguity in the language in question."
We are not in accord with this interpretation insofar as it relates to the lessee's accrued liability to the lessor; nor can we agree with the implication that, assuming a valid assignment to the corporation, the corporation would not be liable for accrued defaults under the lease.
We conclude that it was error to rule summarily for the defendants. The decree, if sustained, would render the lease contract practically worthless to the lessor and deprive her of remedy inasmuch as the decree purports to discharge both the original lessee and the corporate assignee. This would have the incongruous effect of relieving from liability all parties except the lessor who presumably would still be bound. We cannot read such intent into the language of the lease.
Words and phrases used in contracts should be given a natural meaning or the meaning most commonly understood in relation to the subject matter and the circumstances; and a reasonable construction is preferred to one that is unreasonable. James v. Gulf Life Ins. Co., Fla. 1953, 66 So.2d 62. An agreement will not be interpreted so as to place one of the contracting parties at the mercy of the other unless it is clear that such was the intention at the time the agreement was made, and an interpretation which is mutually just will be preferred to one which is unjust. 7 Fla.Jur., Contracts, § 85; 12 Am.Jur., Contracts, § 250.
In Quinerly v. Dundee Corp., 1947, 159 Fla. 219, 31 So.2d 533, 55, the Florida Supreme Court said:
"If the language of a contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary, and such as a prudent man would naturally execute, while the other interpretation [makes] it inequitable, unnatural, or such as a reasonable man would not be likely to enter into, then the reasonable, logical and rational interpretation should be adopted."
The summary decree is reversed and the cause remanded for appropriate proceedings.
Reversed and remanded.
ALLEN, Acting C.J., and KANNER and WHITE, JJ., concur.