ROYAL INDEMNITY COMPANY, INC., A NEW YORK
CORPORATION, APPELLANT, *v.* SPECIAL SERVICE
SUPPLY CO., INC., A CORPORATION, RESPONDENT.

No. 4982

April 19, 1966                                    413 P.2d 500

[Rehearing denied May 16, 1966]

*Singleton, DeLanoy,* and *Jemison,* of Las Vegas, for
Appellant.

*Deaner, Butler & Adamson,* of Las Vegas, for
Respondent.

## OPINION

By the Court, ZENOFF, D. J.:

We are called upon to construe a bonding agreement between a professional surety and a contractor to determine whether a materialman, due and owed monies from the contractor, may recover against the bond.

The surety, Royal Indemnity Company, Inc., contracted a $3,000 bond with Darby Air Conditioning which provided:

"NOW, THEREFORE, if the Principal herein (Darby) shall for the period beginning with the date hereof and ending with the expiration of One Year from said date, faithfully comply with all of the provisions of Chapter 624 of the Revised Statutes of Nevada, as amended, then this obligation shall be null and void, otherwise to remain in full force and effect.

"THE LIABILITY OF THE SURETY herein shall be confined to unlawful acts, omissions, or defaults of the Principal occurring subsequent to the date hereof, and prior to the expiration of One Year from said date; provided, however, that the Surety shall in no event be liable for labor and material bills incurred by the principal prior to the date hereof."

Appellant Royal Indemnity argues this agreement was not a "materialmen's bond" but only ran to the statutory requirements of NRS 624.270 which, appellant insists, do not extend to simple breaches of contract to materialmen.[1]

---

[1]"NRS 624.270.  Bond or cash deposit of new licensee; rights of employees, claimants against bond or deposit.

"1.  No new license, as distinguished from the renewal of an existing license, shall be issued hereafter by the board unless the applicant for a new license shall:

(a) File, or have on file, with the board a bond issued by a qualified surety insurer in a sum to be fixed by the board based upon the magnitude of the operations of the applicant, but which sum shall not be less than $500 nor more than $5,000, running to

The lower court allowed recovery in a summary judgment. We affirm.

1. It is unnecessary to decide the exact limitations of NRS 624.270. Even if, as appellant claims, the statute does not extend to materialmen's contracts, a bond may be conditioned more broadly than the statute requires and "is good at common law, if it is entered into voluntarily by competent parties for a valid consideration, and is not repugnant to the letter or policy of the law * * *." County v. Feldschau, 101 Ore. 369, 199 P. 953 (1921) and authorities cited therein; 18 A.L.R. 1227; 9 C.J. 29. Thus we look exclusively to the particular bonding contract here in issue.

2. We first resort to general rules of contractual construction. Every word must be given effect if at all possible. As was noted in Reno Club v. Investment Co., 64 Nev. 312, 324, 182 P.2d 1011, 173 A.L.R. 1145 (1947), "[t]he court is not at liberty, either to disregard words used by the parties, descriptive of the subject matter or of any material incident, or to insert words which the parties have not made use of. It cannot reject what the parties inserted, unless it is repugnant to some other part of the instrument." Also, Hoaglund v. City of Los Angeles, 103 Cal.App.2d 499, 229 P.2d 823 (1951); Johnston v. Miller, 326 Mich. 682, 40 N.W.2d 770 (1950); Musto v. Grosjean, 208 Cal. 453, 281 P. 1022 (1929).

3. For purposes of this dispute, the instant contract has three crucial provisions: (1) that full compliance

---

the State of Nevada and conditioned upon his compliance with all the provisions of this chapter; * * *

"3. Every person injured by the unlawful acts or omissions of a contractor who has filed a bond or posted a cash deposit as required under the provisions of this section may bring an action in a proper court on the bond or a claim against the cash deposit for the amount of the damage he suffered as a result thereof to the extent covered by the bond or cash deposit.

"4. The claim of any employee of the contractor for wages shall be a preferred claim against any such bond or cash deposit. * * *"

with Ch. 624 by Darby shall make the surety, Royal Indemnity's, obligation "null and void"; (2) that Royal's liability shall be "confined to unlawful acts, omissions, or defaults" of Darby; and (3) that Royal "shall in no event be liable for labor and material bills incurred by (Darby) prior to the date" of the bonding agreement. The problem is to give full effect to each of these provisions. If we accept appellant's argument that materialmen's defaulted bills were not included in the bond, there appears no purpose for Royal expressly denying liability for prior materials, thus, by implication accepting liability for materials procured after the date of the bonding agreement.

4.  Royal argues that the provision for materials was surplusage; "the extraneous insertions of over-cautious attorneys." We cannot so discard plain words in a valid contract.

Royal next argues that the provision for materials must be read in context with Ch. 624, which does not expressly provide for guarantying the payment of materialmen's bills, and Royal was freed of all obligations if Darby "faithfully compl[ied] with all of the provisions of Chapter 624." We must attempt to reconcile "faithful compl[iance] with * * * Chapter 624" with the later clause whereby Royal Indemnity impliedly agreed to incur liability for materials obtained during the term of the bonding contract, though Ch. 624, standing alone, might not require such a bonding.

5.  "If clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible." Quinerly v. Dundee Corp., 159 Fla. 219, 31 So.2d 533, 534 (1947); see Hull v. Burr, 58 Fla. 432, 50 So. 754, 765 (1909). It is only where clauses are totally irreconcilable that a choice may be made between them. Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976 (1948). In the instant contract, compliance with Ch. 624 *can* be harmonized with payments for materials in either of two ways: (1) the contract only encompassed payments for "unlawful" materials—i.e., those

obtained incident to a violation of Ch. 624; or (2) the bonding contract assumed that failure to pay a due and owing bill to a materialman was not "faithful compl[iance] with all of the provisions of Chapter 624"—regardless of whether Ch. 624 required a bonding of such payments.

We cannot accept the interpretation as to "unlawful" materials. Parties to a bonding agreement seem unlikely to have singled out for protection materialmen supplying only wrongful contractors. Certainly Ch. 624 does not so require. "If one interpretation would lead to an absurd conclusion, then such interpretation should be abandoned and the one adopted which would be in accord with reason and probability." Quinerly v. Dundee Corp., supra; see Hull v. Burr, supra.

6. It is our view that full compliance with Ch. 624, at least insofar as the instant parties and contract were concerned, encompassed payment of materialmen's bills in an appropriate spirit of "financial responsibility." See NRS 624.260.[2] Although the $5,000 limit of the statutory bond seems unrealistic when applied to the construction industry, it is the sum fixed by the legislature and can be changed by the legislature.

7. We are reinforced in these views by a final point. The bonding requirements incident to a new contractor's license are expressly set forth in NRS 624.270, supra. If the instant bond was intended only to fulfill that statute, as Royal insists, the parties could easily have drawn their contract in the exact wording of the statute. This to some extent they did—but they also spoke of "defaults" and "material bills." The only reasonable inference is that they intended to go beyond the statutory language.

Affirmed.

THOMPSON, J., and GABRIELLI, D. J., concur.

---

[2]"NRS 624.260. Applicant to show experience, financial responsibility. The board shall require an applicant to show such a degree of experience, financial responsibility and such general knowledge of the building, safety and health laws of the State of Nevada and the rudimentary principles of the contracting business as the board shall deem necessary for the safety and protection of the public."

Badt, J., being ill, the Governor designated Honorable John E. Gabrielli, of the Second Judicial District Court, to sit in his place.