454 So.2d 55 (1984)
Harold THOMPSON and Marion Thompson, His Wife, Appellants,
v.
C.H.B., INC., a Florida Corporation, Appellee.
No. 83-2198.
District Court of Appeal of Florida, Fourth District.
August 8, 1984.
Rehearing Denied September 10, 1984.
Patrice A. Talisman of Daniels & Hicks, Miami, for appellants.
*56 Michael L. Gates of Kaplan, Jaffee & Gates, Hollywood, for appellee.
WALDEN, Judge.
This appeal involves alleged breaches of a management agreement between Mr. and Mrs. Thompson and C.H.B., Inc. The Thompsons contracted to manage and improve certain corporate owned apartments. Judgment for $48,233.68 was entered against the Thompsons. They appeal. We affirm in part and reverse in part.
The agreement and the accountings under it were somewhat complicated. We have examined the record in light of the appellate treatment and find no reversible error demonstrated except for the matter of travel expenses.
The management agreement provided:
(1) The Thompsons would manage the apartment building and be responsible for renting, collecting the rent, paying the bills and maintaining the building.
(2) The Thompsons would open a checking account and deposit therein all rental receipts and pay all bills out of this account. In addition, if the expenses of the building exceeded its income, the Thompsons were to make up such deficiencies and be reimbursed after the sale.
(3) The Thompsons were to fix up the building to prepare it for sale and to obtain the highest rental possible.
(4) The Thompsons were to put the building up for sale and sell it for no less than $150,000.
(5) As compensation the Thompsons were to be reimbursed for any out of pocket expenses they incurred and receive 80% of the first $20,000 of net profits and 50% of the net profits over $20,000 that were obtained in the sale of the building. (Emphasis added)
The apartments were located at Cape Canaveral. The Thompsons lived in Fort Lauderdale. Between October, 1974, through March, 1975, the Thompsons commuted back and forth between the two places. In March, 1975, Mrs. Thompson moved to Cape Canaveral so as to manage. Mr. Thompson continued to commute on weekends and during his vacation.
The apartments were purchased for $94,000.00. The Thompsons successfully managed and made substantial improvements to the property. In February, 1980, the apartments were sold for $234,000.00. There was disagreement as to the amounts of disbursements made by the Thompsons to themselves including the sum of $4,963.00 which, over the course of time, they had disbursed to themselves as travel expenses. This suit reflects that disagreement. The trial court disallowed the disbursements for travel expenses.
The Thompsons computed their travel expenses on the basis of $20.00 per trip. There is no dispute as to the reasonableness of that sum and we would simply note, based on everyday experience, that the sum is minimal, to say the least. Also, there is no dispute as to the number of trips made or their necessity.
Peripherally, one of the predecessor managers was paid $30.00 per week for travel expenses. Whenever any of the shareholders traveled from south Florida up to see the apartments, they were reimbursed from corporate funds for travel expenses. In other words, the Thompsons just continued the pre-existing practice and there was never any objection to such reimbursements during the five years the Thompsons were reimbursing themselves from corporate funds.
The trial court disallowed travel expenses based upon its interpretation of the contract.
Looking back to the contract, there are two salient provisions. First, the Thompsons were to be reimbursed for any "out-of-pocket expenses" and such expenses were not otherwise defined or limited. Second, in addition, the Thompsons were to be paid for their efforts, upon sale, 80% of the first $20,000.00 of net profit and 50% of the net profit over $2,000.00.
Perhaps understandably, the Thompsons contend that travel costs were out-of-pocket expenses. The corporation contends otherwise *57 and that the percentage of profits provided for the Thompsons cover such expenses.
We hold that the travel expenses here constituted out-of-pocket expenses so as to entitle the Thompsons to reimbursement. With no help contained in the contract as to what was intended by "out-of-pocket expenses," we give the term its literal meaning and say that it means money coming out of the Thompsons' pocket in furtherance of the corporate purpose. The purchase of gasoline and payment of turnpike fees so as to travel from home a distance of about 185 miles to the work site certainly entailed reaching into the Thompsons' pocket for such funds.
A court should arrive at a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties. Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788 (Fla. 2d DCA 1978). Words should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable. Sheldon v. Tiernan, 147 So.2d 167 (Fla. 2d DCA 1962), affirmed in part, reversed in part, 191 So.2d 87 (Fla. 4th DCA 1966).
We affirm in part; reverse in part; and remand for further proceedings consistent herewith.
LETTS and HURLEY, JJ., concur.