Bernard Tomson, J.
By order to show cause, dated July 22, 1960, the tenant moves to set aside a final order entered upon a written stipulation, dated November 24,1959, and seeks leave to serve an answer to the petition.
About eight months have elapsed since the tenant’s attorney entered into the written stipulation resulting in the final order. The ground for the motion is an alleged lack of authority on the part of said attorney, Edward Goldman, Esq., to enter into the stipulation in question or to consent to the entry of the final order or to waive the tenant’s counterclaim against the landlord.
The affidavit in support of the order to show cause states: “ In the early part of November, 1959, I was served with the petition herein. On November 11, 1959, I left this country for Hong Kong in order to bring my three daughters back and to leave them with my sister. Consequently, I was unable to appeap *314 or defend in this action. I turned the precept over to edwabd Goldman, esq., to handle the matter for me during my absence from the country. On November 24,1959, Mr. Goldman, without authority from me or without my knowledge or consent, entered into a stipulation with the landlord consenting to the entry of a final order in this action and discontinue my claim against the landlord. This stipulation was totally unauthorized and in excess of Mr. Goldman’s authority. I only retained Mr. Goldman to defend the dispossess action and counterclaim for damages sustained by me during my tenancy. I did not return to this country until about June 15, 1960.”
The landlord hotly contests the statements made in the tenant’s affidavit, asserting that the stipulation was entered into after a number of appearances in court, that the landlord waived a substantial claim in excess of $4,000 for rent past due, that the attorney for the tenant was authorized to enter into the subject stipulation, that each month until June 1, 1960 the tenant paid $350 for the use and occupancy of the premises, and, at no time, until the current application did the tenant question the stipulation or final order.
It seemed appropriate to the court that the matter be set down for a hearing on which testimony could be adduced as to the authority of the tenant’s attorney to enter into the stipulation in question and as to the tenant’s laches, if any, or his ratification of the acts of his attorney even if unauthorized. (Cf. Matter of Glebe Juniors, 279 App. Div. 653, revg. 199 Misc. 934.)
At the hearing the tenant and the attorney, Mr. Goldman, testified at length. Their testimony, in the main, was consistent except as to one material fact; i.e. whether, from the time the tenant left the jurisdiction in November, until he heard from the tenant some time about December 15, 1959, Mr. Goldman knew at what address he could communicate with his client. The tenant stated that the attorney had this information. This was categorically denied by the attorney, whose version the court accepts.
In a letter, dated December 11, 1959, the tenant wrote as follows:
Dear Mr. Goldman: I have arrived Hong Kong yesterday. I am staying in Hotel Nathan, Nathan Road, Kowloon, Hong Kong. How is the ease between Mr. Brumberg and myself developed? I am very anxious to know? Please write me as soon as this letter is received. Sincerely yours, Chunghai Chan. Room 530, Hotel Nathan, Nathan Road, Kowloon, Hong Kong. When you write, it is very important to write the room number, because people here may not know my English name but they know the room number. Therefore the proper way of address to me is exactly as follows: Mr. Chunghai Chan, c/o Hotel Nathan, Room 530, Nathan Road, Kowloon, Hong Kong.
*315 On December 15, 1959, Mr. Goldman replied as follows:
Mr. Chunghai Chan, c/o Hotel Nathan, Room 530, Nathan Road, Kowloon, Hong Kong. Re: Lease with Brumberg.
Dear Mr. Chan: Receipt is acknowledged of your letter of December 11, which we received in today’s mail. As you know the dispossess notice which was personally served on you just before you left on your trip was returnable in the District Court at Mineóla on November 9th. We phoned Mr. Brumberg’s attorneys and we obtained a postponement of one week. He would not agree to any further adjournment, and we were therefore compelled to appear in court on November 16th.
We argued before the judge for an extension of time. Mr. Brumberg’s attorney vigorously opposed any further delay or postponement of the trial, but over his protest, the judge granted us a final adjournment of one week, and directed that this ease be tried on November 23rd. In this type of case, the law clearly provides that all landlord-tenant eases, even though a jury trial is demanded, be heard at the earliest possible time. In other words, the judge was powerless to grant our request for additional time.
Under the circumstances, I went personally to New York to see Mr. Spar at his office to obtain his assistance and cooperation. I informed him that you were on a trip of great personal importance and I asked him to meet with me at the office of Mr. Brumberg’s attorneys. I attended a conference and after much negotiation they were not willing to adjourn the matter. In view of this situation, I felt that if we did have to appear in Court for trial without you, a final dispossess order would undoubtedly be obtained, and in addition, a judgment would be entered for the rent arrears, plus interest and court costs. In order to prevent such an unfortunate result, the best I could do for you was to agree to a stipulation under which the Landlord would waive any and all claim for rent, and giving you the right to remain in possession until December 31, 1959. The stipulation further provides that any claims for alteration work which you had ordered would be paid by you. I have explained this entire situation to your son and the cook and they have full knowledge of what has transpired. I told them that it was my hope to be able to arrange with the Landlord’s attorneys for you to continue in possession of the premises after December 31,1959, by making payment of $350 per month, beginning January 1, 1960, for use and occupancy. This is the same rental as provided in the lease which has now been terminated.
It is my further hope that we can continue to remain in occupancy on a month-to-month basis by making payment of this sum each month, until you return and can make your own arrangements.
I shall continue to keep your son advised of the developments in this case and you may be assured that I am doing everything possible to relieve you of any worry and anxiety concerning this matter. I hope that your visit has been accomplished satisfactorily. Very truly yours, goldülan & shapibo.
The tenant testified that this letter was not actually received by him until March 9, 1960. He ascribed this to the fact that he left Hong Kong for Formosa without notifying Mr. Goldman or apparently providing for the forwarding of mail. In any event, the delay, if any, in the receipt of this important letter is attributable to the tenant.
At regular monthly intervals, six letters, the last dated June 1, 1960, were sent by Mr. Goldman to the attorney for the landlord, *316 enclosing a check signed by the tenant’s cousin. Each letter is substantially the same as the letter of June 1,1960, which reads:
Gentlemen: We are enclosing a cheek of Chin Yew made payable to your order in the sum of $350.00 for the use and occupancy of the premises occupied by Chunghai Chan located at 68 Merrick Road, Baldwin, New York, until June 30, 1960. It is understood that all of the rights and remedies of the landlord in the summary proceedings are not in any way affected or prejudiced by reason of the extension of the stay of execution and the acceptance of the enclosed check. Very truly yours, goldmait & shapiro.
It would seem unnecessary to delineate the facts any further. The tenant properly states the applicable law, that “ [a]n attorney may not settle or compromise his client’s case in the absence of consent by the client ”. (Silver v. Parkdale Bake Shop, 8 AD 2d 607 [1st Dept., 1959]; Deutsch v. Ætna Ins. Co., 68 N. Y. S. 2d 524, 527; Barrett v. Third Ave. R. R. Co., 45 N. Y. 628, 635 [1871]; and cases collected in 66 A. L. R. 107; 30 A. L. R. 2d, 944; 3 N. Y. Jur., Attorney and Client, p. 421 et seq.)
In this jurisdiction the burden of coming forward with proof as to the attorney’s authority rests upon the party who asserts it (see Silver v. Parkdale Bake Shop, supra), although the rule seems to be otherwise in other States (cf. 66 A. L. R. 126 and 30 A. L. R. 2d 953). In this State, a party who relies on the authority of an attorney to compromise an action in his client’s absence deals with such an attorney at his peril.
However, it seems well settled that “ (a)n unauthorized compromise by an attorney may be ratified by the client. An inference of ratification is justifiable where there is a long acquiescence and silence on the part of the client after knowledge of the compromise ”. (3 N. Y. Jur., Attorney and Client, p. 424.) Further, 1 ‘ it has been held that in case of an emergency, where the circumstances are such that the attorney is obliged to act without delay, and there is no time or opportunity for consultation with the client, the attorney has power to compromise his client’s claim.” (3 N. Y. Jur., Attorney and Client, p. 422.) (For a discussion of these rules, see 66 A. L. R. 120, 130, and 30 A. L. R. 2d 950, 955.)
Under the peculiar circumstances here, the court holds that the attorney was in fact authorized by his client to enter into the subject stipulation. Even if this were not so, the circumstances require a finding that, with the proceeding marked peremptorily against his client, the attorney found himself in an emergency which justified his entering into the stipulation and also that there was ratification (as well as laches) by the tenant of the attorney’s acts. The tenant’s delay, during the period measured, from a few days after December 15, 1959 ( a date on *317 which he should have received by letter detailed information respecting the stipulation), or March 9,1960 (a date on which he testified he had such information), or from June 15,1960 (when he returned to this country), or from July 5, 1960 (the date on which a copy of the stipulation was given to him) —until July 22, 1960 (when he made the instant motion), resulted in his adoption of the fruits of the compromise accompanied by passive inaction which places him squarely within the rule that his laches or conduct constituted ratification, and would require a denial of the relief sought. The motion is in all respects denied.