172 So.2d 472 (1965)
Leonard L. BURSTEN, Individually and as Trustee, Appellant,
v.
Hyman GREEN and Irving Green, Individually, and Green Brothers Builders, Inc., a Florida Corporation, and Honeymoon Isle Development Corporation, a Florida Corporation, and Leonard Stein et al., and Mark R. Hawes and C. Ray Smith, Individually, Appellees.
No. 5265.
District Court of Appeal of Florida. Second District.
January 8, 1965.
Rehearing Denied March 11, 1965.
*473 Ray Ulmer, Jr., of Wightman, Rowe & Ulmer, Clearwater, for appellant.
Emerson L. Parker, of Parker, Parker & Battaglia, St. Petersburg, for appellees Hyman Green and Irving Green, Green Brothers Builders, Inc., Honeymoon Isle Development Corp., Leonard Stein and others.
Hawes & Hadden, Tampa, and C. Ray Smith, St. Petersburg, for appellees Mark R. Hawes and C. Ray Smith.
ANDREWS, Judge.
This is an appeal from an interlocutory order upholding a stipulation settling the cause entered into by the attorneys for the plaintiff and principal defendants without the consent of the plaintiff.
The plaintiff, Leonard L. Bursten, individually, and as Trustee, engaged in a venture with the defendants, Hyman Green and Irving Green, individually, Green Brothers Builders, Inc., a Florida corporation, and Honeymoon Isle Development Corporation, a Florida corporation. A dispute arose as to their respective rights. The plaintiff by written agreement retained Mark Hawes and C. Ray Smith to represent him.
The agreement authorized said attorneys to take appropriate action to establish his rights individually and as Trustee against the defendants, and to defend any counterclaim which might arise, and provided that they would be paid a fee of thirty percent of the amount recovered. About a month later the plaintiff by letter confirmed the arrangement individually by authorizing said attorneys "to act in the matter as fully as he could act for himself, including the right to file any proceedings deemed advisable and to negotiate settlement thereon." No reference to his interests as Trustee was mentioned in this letter.
A suit was filed, numerous depositions were taken, and numerous hearings on interlocutory matters were handled before the court. On April 3, 1963 Messrs. Hawes and Smith executed as attorneys for the plaintiff a stipulation settling all the matters in controversy. On the same day the stipulation was approved by order of the court. The plaintiff was not notified prior to its execution and approval by the court, but learned of it the next day. Whether or not he could have been notified prior to the signing of the stipulation is a matter in dispute.
*474 The stipulation provided that the defendants would pay the plaintiff a total sum of $550,000, $150,000 cash upon the delivering of mutual releases between the parties, and $400,000 payable in equal annual installments of $50,000 each, together with interest at 3 1/2% per annum. The note representing said deferred payment was to be secured by a note of other persons not parties to the suit. The stipulation also provided that the plaintiff would "execute to the defendants, and each of them, a full release of any and all claims he might have or claim to have against them, or either of them, by reason of the matters in controversy in this litigation or otherwise."
The plaintiff, immediately on being advised, objected on the grounds that he had not authorized his attorney to settle the cause, that he had previously rejected an offer of settlement of $500,000, that he had made a counter offer of settlement for the amount of $750,000, and that he could have been contacted in advance.
The matter was set for hearing by the court on its own motion, and the plaintiff appeared in person. As a result of said hearing, the court re-affirmed its approval of the stipulation, and impressed a lien against any property of the defendants for any sums which might be due the plaintiff on account of the contingency fees of the plaintiff's attorney.
The defendant Leonard Stein was an intervenor as a judgment creditor of plaintiff and not directly concerned with the terms of the settlement. In an order approving substitution of counsel, the court permitted plaintiff's attorneys in the original proceeding, Mark R. Hawes and C. Raymond Smith, to intervene as parties defendant.
The question before the court here is an interpretation of the employment agreement between the plaintiff Leonard Bursten and the attorneys who initiated the litigation, Mark R. Hawes and C. Ray Smith, for the purpose of determining whether or not said employment agreement gave sufficient authority under the circumstances to said attorneys to settle the matter in litigation without the prior approval of or ratification thereof by the plaintiff.
It is an almost universal rule that the mere employment of an attorney to represent a client with respect to litigation or other matters does not of itself give the attorney the implied or apparent authority to compromise or settle his client's cause of action. Palm Beach Royal Hotel, Inc. v. Breese, Fla.App. 1963, 154 So.2d 698; Kramer v. City of Lakeland, Fla. 1948, 38 So.2d 126; 7 Am.Jur.2d Attorneys at Law § 126; 7 C.J.S. Attorney and Client § 105; Annot., 66 A.L.R. 107 (1930) and 30 A.L.R.2d 944 (1953). The one exception to this rule is a situation in which the attorney is confronted with an emergency which requires prompt action to protect his client's interests and the situation is such that consultation with the client is impossible. Brumberg v. Chunghai Chan, 1959, 25 Misc.2d 312, 204 N.Y.S.2d 315; 7 C.J.S. Attorney and Client § 105; Annot., supra. There is, of course, no objection to the client giving his attorney special or express authority to compromise or settle his cause of action, but such authority must be clear and unequivocal. Johnston v. Cox, 1934, 114 Fla. 243, 154 So. 206. When such is the case, the client is bound and the agreement will be enforced by way of specific performance. Coe v. Diener, Fla.App. 1964, 159 So.2d 269. An unauthorized compromise, executed by one's attorney, however, unless subsequently ratified, is of no effect and may be repudiated or ignored and treated as a nullity by one in whose behalf it was executed. Palm Beach Royal Hotel, Inc. v. Breese, supra; 11 Am.Jur., Compromise and Settlement § 33.
The record in this case shows that an emergency which would justify the attorneys in proceeding without the client's consent did not exist. We must, therefore, *475 determine whether the employment contract or the letter gave the attorneys express or special authorization to execute the settlement agreement.
The plaintiff claims that the term "negotiate settlement thereof" as used in the letter gave the attorneys only the authority to conduct communications or conferences with a view to coming to terms of a proposed agreement and did not empower them to compromise or settle the cause without his approval. The defendant-attorneys argue that the purpose of the letter was to "empower his counsel to effectively effectuate a conclusion to his litigation" and that the term "negotiate settlement thereof" as used in the letter means "to complete and wind up his litigation on his behalf."
The Florida Supreme Court has held that the term "negotiate * * * implies the power to bargain and consummate a transaction." Watson v. Holland, 1944, 155 Fla. 342, 20 So.2d 388. That case involved the interpretation of § 270.28, F.S.A., 1941, which authorized the Board of Trustees of the Internal Improvement Fund to "negotiate, sell and convey lease-hold estates and to make, execute and deliver lease-contracts" for the discovery and the production of oil and gas and other minerals.
The word "negotiate" has more than one meaning, Black, Law Dictionary (4th ed. 1951) and the construction given to that term in one context does not require that the same construction be given when it is used in an entirely different context. In the Watson case, supra, the court was construing the language so as to carry out the intent of the legislature as expressed in the Act and gave that word its "broad and comprehensive" meaning. In the instant case we are dealing with a contract between an attorney and his client who occupy a confidential relationship, and must give the words their ordinary and natural meaning. Sheldon v. Tiernan, Fla.App. 1962, 147 So.2d 167. Furthermore, where the language of a contract is susceptible to two constructions, the construction which "makes it fair, customary, and such as a prudent man would naturally execute * * * should be adopted." Quinerly v. Dundee Corp., 1947, 159 Fla. 219, 31 So.2d 533, 535. Based on these reasons we hold that giving the language used its natural and ordinary meaning, the attorneys were only empowered to discuss or confer upon the terms of a proposed agreement and that the contract did not clearly and unequivocally authorize them to enter into a binding settlement agreement without the client's consent.
It is true that the record discloses actions by the client which could under the circumstances here be construed as an effort to settle without the attorney's knowledge, and so arrange the settlement as to avoid paying the fee which had been agreed to be paid to the attorneys. We need not decide whether such improper conduct occurred because that is immaterial to the issue presented here. Likewise our decision implies no bad faith on the part of the attorneys. The law provides various means by which attorneys may collect their fees, but that question is also not presented.
Accordingly, the order approving the stipulation in settlement of the cause of action between the parties in this cause is reversed with directions that the parties remain before the court in the same position they were before the execution of the stipulation.
Reversed and remanded, with directions.
SMITH, C.J., and SHANNON, J., concur.