JOANN QUIRRION, APPELLANT, *v.* JOHN S. SHERMAN, ROSE E. SHERMAN, DR. MELVIN BAGLEY, BARBARA BAGLEY, JERRY HENDRICKS AND CALICO RIDGE PROPERTY OWNERS ASSOCIATION, THE THAXTON FAMILY LIMITED PARTNERSHIP I, RESPONDENTS.

No. 22711

February 10, 1993                            846 P.2d 1051

*Jolley, Urga, Wirth & Woodbury,* Las Vegas, for Appellant.

*Wanderer & Wanderer* and *Sally Loehrer,* Las Vegas, for Respondent Sherman.

*Wells, Kravitz, Schnitzer & Sloane,* Las Vegas, for Respondents Bagley, Hendricks and Calico Ridge.

*Neil Mullins,* Las Vegas, for Respondent Thaxton Family.

## OPINION

*Per Curiam:*

In April 1988, the appellant, Joann Quirrion, purchased a home in a Henderson subdivision from respondent Melvin Bagley, the developer of the subdivision. Quirrion claims that when she bought the home, Bagley represented to her that her view would not be obstructed by another home.

The following year, respondents Rose and John Sherman bought an unimproved lot from Bagley that was adjacent to and downhill from Quirrion's lot. The Shermans decided to build a two-story home on the lot and submitted building plans to the subdivision's architectural review committee ("the Committee") for approval; Bagley, his wife and his son-in-law are three of the four Committee members. Following Committee approval, the Shermans constructed a house that was twenty-six feet high and blocked Quirrion's view.

When Quirrion first realized that the Sherman's house would block her view, she contacted Bagley and complained that the Committee had approved the Sherman's home in violation of the subdivision's covenants, conditions and restrictions ("the CC&R")[1] and the architectural standards and procedures ("AS&P");[2] the CC&R and the AS&P require that the Committee consider whether construction of a new building would impact the view of the surrounding lots. Subsequently, a member of the Committee acknowledged that no Committee member visited Quirrion's lot to determine the effect that the Sherman home would have on her view. Bagley, however, claims that a 1985 amendment to the CC&R permits construction of a twenty-six foot two-story home on the Sherman's lot regardless of its effect on Quirrion's view.[3] In addition, Bagley contends that the Committee actually considered Quirrion's view.

---

[1]Section 7.9 of the CC&R provides the following:

7.9 *Standards of Review.* The Committee shall, in reviewing plans, specifications and other material submitted to it consider the suitability of the proposed building or other improvement for the area in which it will be located; the quality of the materials to be used in construction; and the effect of the proposed building or other improvement on the Property, and other Lots. *In that regard, the Committee shall consider the impact of the proposed height of any improvement upon the view from any other Lot* and shall have the right to disapprove plans and other specifications by reason of any such impact.

(Emphasis added.)

Section 6.1 of the CC&R provides the following:

6.1 No building, wall, or other improvement shall be erected or maintained nor shall any construction thereof be commenced upon the property, nor shall any exterior addition to or change or alteration therein be made until the plans or specifications showing the nature, kind, shape, height, materials and location of the same shall have been submitted to and approved in writing as to *harmony of external structures and the location in relation to surrounding structures and topography by the committee.*

(Emphasis added.)

[2]Paragraph IV, Article A, Section 3, of the AS&P provides, in part:

The Committee shall, in reviewing the designs reflected by plans, specifications and other materials submitted to it, consider the harmony of external design, appearance, and location of the proposed building or other improvement in relation to surrounding structures and topography. Such design shall include, without limitation, consideration of building form and size, external materials and colors, building style . . . *effect upon view of the surrounding Lots,* and irrigation location.

(Emphasis added.)

[3]The March 25, 1985 amendment to the CC&R states, in part, the following: "Two story dwellings, maximum height 26' (twenty-six feet) will be permitted on the following lots: Block 1 Lots, 1-10, Block 2 Lots 1-6, 15-17."

On May 31, 1989, Quirrion filed this suit against the respondents.[4] Quirrion sought declaratory relief regarding the effects of the CC&R and its 1985 amendment, injunctive relief for modification of the Sherman home to restore her view, and monetary damages. Subsequently, on March 24, 1991, the respondents moved for summary judgment. The district court granted the motion, finding that, as a matter of law, the respondents had complied with the CC&R. We disagree.

Initially, we note that summary judgment is appropriate only when no genuine issue of fact remains for trial and one party is entitled to judgment as a matter of law. In determining whether summary judgment is proper, a court must view the evidence in the light most favorable to the party against whom summary judgment is sought. Whiltsie v. Baby Grand Corp., 105 Nev. 291, 774 P.2d 432 (1989). Thus, in the present case, we must accept as true Quirrion's allegation that Bagley represented to her that her view would remain unobstructed.

Without refuting Quirrion's allegation, Bagley asserts that the 1985 amendment to the CC&R overrides all other CC&R provisions which require that Quirrion's view be considered. It is a well established principle of contract law, however, that where two interpretations of a contract provision are possible, a court will prefer the interpretation which gives meaning to both provisions rather than an interpretation which renders one of the provisions meaningless. Royal Indemnity Co. v. Special Service Supply Co., 82 Nev. 148, 413 P.2d 500 (1966). In the present case, Quirrion contends that the 1985 amendment should be interpreted to mean that two-story homes may be built to a *maximum* of twenty-six feet, *subject to* the additional requirement that the Committee consider whether the homes would unreasonably interfere with her view. Since this interpretation gives meaning to all the provisions in the CC&R and is in accord with Bagley's representations, we conclude that the 1985 amendment does not supplant consideration of Quirrion's view.

Bagley also contends that the Committee actually considered Quirrion's view. Based on our reading of the record, however, we think there is a question of fact whether the Committee considered her view in good faith. Specifically, the record indicates that no member of the Committee visited Quirrion's home to deter-

---

[4]The respondents include John and Rose Sherman (the original owners of the house), the Thaxton Family Limited Partnership (the current owners of the Sherman house), Melvin and Barbara Bagley (the sellers and members of the Committee), Jerry Hendricks (a member of the Committee), and the Calico Ridge Property Owners Association.

mine what the impact of the new building would be on her view. In addition, we note that a checklist which the Committee used in considering building plans included a box which stated, "effect upon view from surrounding Lots." Significantly, the box was not checked. We therefore conclude that a question of fact exists regarding whether Quirrion's view was considered.

Quirrion also filed suit against Bagley for misrepresentation based on her allegation that Bagley promised that her view would never be obstructed. It appears from the record that, at the time Bagley made the alleged representation, he believed the 1985 amendment allowed homes to be built up to twenty-six feet regardless of whether they obstructed the view of the surrounding lots. Consequently, we conclude that there exists a question of fact regarding the nature of Bagley's alleged representations.

Accordingly, based on our conclusions that there are unresolved questions of fact, we reverse the district court's grant of summary judgment and remand for further proceedings.[5]

ROSE, C. J., YOUNG and SPRINGER, JJ., and CHRISTENSEN, D. J.,[6] concur.

---

[5]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

