An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SATICOY BAY, LLC SERIES 2301 HAREN, Appellant, vs. LNV CORPORATION, Respondent. | No. 65151 |

FILED

DEC 2 3 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

### ORDER OF REVERSAL AND REMAND

This is an appeal from a district court order granting a motion to dismiss in a quiet title action. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge. On appeal, we must determine whether the district court properly dismissed appellant's quiet title action based on its interpretation of the covenants, conditions, and restrictions (CC&Rs). Our review is de novo, *Diaz v. Ferne*, 120 Nev. 70, 73, 84 P.3d 664, 665-66 (2004); *see also Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008) (applying de novo standard of review for orders granting motions to dismiss), and we reverse.

"In evaluating a motion to dismiss, courts primarily focus on the allegations in the complaint." *Baxter v. Dignity Health*, 131 Nev., Adv. Op. 76, 357 P.3d 927, 930 (2015). However, the four corners of the complaint do not limit this court's review. *Id.* Rather, this "court may also consider unattached evidence on which the complaint necessarily relies." *Id.* (internal quotation omitted). If a document is "incorporated by reference or integral to the claim," this court may consider said document without converting a motion to dismiss into a motion for summary judgment. *Id.* (internal quotation omitted). Here, the complaint did not

15-39450

attach the CC&Rs. Nevertheless, the CC&Rs are integral to the quiet title claim in the complaint. Further, respondent requested judicial notice of the CC&Rs, which appellant did not oppose. Thus, "no party questions the authenticity of the document." *Id.* (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011)).

The main issue on appeal is whether the incorporation of superpriority language from NRS Chapter 116 in a common interest community's (CIC) CC&Rs renders this court's *SFR* decision applicable to the CIC's foreclosure. *See SFR Invs. Pool 1, L.L.C. v. U.S. Bank, N.A.*, 130 Nev., Adv. Op. 75, 334 P.3d 408 (2014). Although NRS Chapter 116 does not by its terms apply, since this is a nonresidential community, the CC&Rs incorporate NRS 116.3116(2) (2013)'s superpriority language verbatim. *See* NRS 116.12075(1). Thus, our interpretation of the same language found in NRS 116.3116(2) (2013) provides meaningful guidance to interpreting the CC&Rs here, and suggests that the CC&Rs create a split priority lien for the CIC where the superpriority portion of the lien has true priority over respondent LNV's first security interest, and the foreclosure of that superpriority portion thus would extinguish the security interest. *See SFR Invs.*, 130 Nev., Adv. Op. 75, 334 P.3d at 412.

The CC&R sections implicated in this appeal are contained in Article 6, which concerns the "Covenant for Maintenance Assessments to Association." Section 6.1 explains that the lot owners agree to pay assessments and other costs and fees, all of which "shall be a continuing lien upon the Lot against which each such assessment is made." When a lot owner becomes delinquent on assessments, Section 6.11 gives the CIC the authority to record a notice of delinquent assessment. The nature of

the CIC's lien is explained in Section 6.13, which states, including the 1997 amendments,[1] that:

> Section 6.13. Continuing Lien. The lien shall also secure all other payments and/or assessments which shall become due and payable with respect to said Lot following such recording, and all costs (including attorneys' fees and penalties) and interest accruing thereon. Unless sooner satisfied or released and its enforcement initiated, said lien shall continue for a period of three (3) years from the date of recordation of the notice of assessment. When a notice of assessment has been recorded, such assessment shall constitute a lien on each respective Lot, *prior and superior to all other liens, except* (i) all taxes, bonds, assessments and other levies which, by law, would be superior thereto, and (ii) *the lien or charge of any first mortgage of record except as otherwise provided in section 6.19 herein as amended.*

(Emphases added). The CC&Rs also grant the CIC a power of sale to foreclose on the lien:

> Section 6.15. Foreclosure. A power of sale is conferred in the Association for the enforcement of any assessment lien. Each assessment lien may be foreclosed pursuant to Nevada Revised Statute 116.31162 and 116.31164 as from time to time may be amended or any successor statute.

A later section further refines the CIC's lien in relation to the first security interest:

---

[1]The recitals in the amendment document explain that these changes were "to facilitate purchasers obtaining financing under Section 503 and 504 of the Small Business Industrial Act of 1959 . . . by subordinating the assessment lien to the two Deeds of Trust required for participation in the 'SBA 504 loan' program."

> Section 6.18. Liens/Security Interest. A lien under this section is prior to all other liens and encumbrances on the Lot except:
>
> (a) Liens and encumbrances recorded before the recordation of the declaration;
>
> (b) Liens for real estate taxes and other governmental assessments or charges against the Lot;
>
> (c) Other than is provided in this section, a first security interest on the Lot recorded before the date on which the assessments sought to be enforced became delinquent.
>
> i) Super Priority. The lien is also prior to all security interest described in paragraph (c) to the extent of the assessments for Association Property based on the periodic budget adopted by the Association which would have become due in the absence of acceleration during the six (6) months ("super priority") immediately preceding the institution of an action to enforce the lien.

Finally, (amended) Section 6.19 states:

> Section 6.19. Subordination. The lien of assessments provided for herein shall be subordinate to the lien of any first Mortgage upon a Lot and shall also be subordinate to the second Mortgage or Deed of Trust required for participation in financing under Sections 503 and 504 of the Small Business Investment Act, as amended. The lien of assessments shall not be subordinate to any second or other lien except as provided herein.

"Mortgage," as used in the CC&Rs, includes deeds of trust.

Appellant Saticoy argues that Section 6.18 of the CC&Rs contains substantially the same language as NRS 116.3116(2) (2013)'s "superpriority" language, which this court confirmed grants an association a true priority lien over the first security interest in *SFR Investments*, 130

SUPREME COURT
OF
NEVADA

(O) 1947A

Nev., Adv. Op. 75, 334 P.3d 408. Thus, Saticoy submits that we should interpret Section 6.18 the same and hold that the CIC's superpriority lien had true priority over LNV's interest. We agree.

LNV argues that because the CIC is nonresidential and incorporated only NRS 116.31162 (2013) and NRS 116.31164 (2005) when granting it a power of sale, and not NRS 116.3116 (2013), our precedent interpreting NRS 116.3116(2) (2013) has no relevance to the lien priority outlined in the CC&Rs. *See* NRS 116.1201(2)(b) (declining to apply NRS Chapter 116 to: "A planned community in which all units are restricted exclusively to nonresidential use unless the declaration provides that this chapter or a part of this chapter does apply to that planned community pursuant to NRS 116.12075"); NRS 116.12075(1) (stating that NRS Chapter 116 may apply to the extent the declaration states that: (1) the entire chapter applies, (2) only NRS 116.001-116.2122 and 116.31166-116.31168 apply, or (3) only NRS 116.31166-116.31168 apply). Though LNV is correct that this is a nonresidential CIC and the CC&Rs do not explicitly reference NRS 116.3116 (2013), the CC&Rs incorporated NRS 116.3116(2) (2013)'s superpriority language verbatim, rather than just by citation. NRS 116.3116(2) (2013) states, in pertinent part:

> A lien under this section is prior to all other liens and encumbrances on a unit except:
>
> . . .
>
> (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . . . .
>
> . . .
>
> *The lien is also prior to all security interests described in paragraph (b) to the extent of* any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of

SUPREME COURT
OF
NEVADA

(O) 1947A

the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . .

(Emphasis added). Section 6.18 similarly states that:

A lien under this section is prior to all other liens and encumbrances on the Lot except:

. . .

(c) Other than is provided in this section, a first security interest on the Lot recorded before the date on which the assessments sought to be enforced became delinquent.

i) Super Priority *The lien is also prior to all security interest described in paragraph (c) to the extent of* the assessments for Association Property based on the periodic budget adopted by the Association which would have become due in the absence of acceleration during the six (6) months ("super priority") immediately preceding the institution of an action to enforce the lien.

(Emphasis added). So, just like NRS 116.3116(2) (2013), Section 6.18 says that the superpriority lien is "prior to" the first security interest, rendering the analysis of *SFR Investments* applicable. *See* 130 Nev., Adv. Op. 75, 334 P.3d at 412.

LNV protests that this reading would render Section 6.13, which excepts "the lien or charge of any first mortgage" from the general rule that the association lien is prior and superior to all other liens, and Section 6.19, which states that the association's lien "shall be subordinate to the lien of any first Mortgage," meaningless. Instead, LNV argues that the only way to meaningfully read the CC&R sections together is to find that Section 6.18's superpriority lien is really only a priority for payment,

and thus not a true lien. That "prior to" means something other than a prior lien capable of extinguishing junior interests when foreclosed upon, however, was rejected by *SFR Investments*. *Id.* at 412-14. And the CC&R provisions can be reconciled, while still maintaining the superpriority lien's true priority status, as such: after the CIC is paid the superpriority amount from its foreclosure sale proceeds, Sections 6.13 and 6.19 entitle LNV to share in the remaining proceeds. This is also consistent with Section 6.15, which adopted NRS 116.31164 (2005), and under which LNV would be a "subordinate claim of record" entitled to share the proceeds after the CIC's sale expenses and superpriority lien amount are paid.[2] Therefore, though not controlling in the sense that this is a nonresidential community that did not, by operation of law, opt into NRS Chapter 116's superpriority statute, *SFR Investments* provides a persuasive interpretation of the superpriority language in the CIC's CC&Rs that is

---

[2]NRS 116.31164(3)(c) (2005) requires the person conducting the association's sale to apply the proceeds in the following order:

> (1) The reasonable expenses of sale;
>
> (2) The reasonable expenses of securing possession before sale, holding, maintaining, and preparing the unit for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, and, to the extent provided for by the declaration, reasonable attorney's fees and other legal expenses incurred by the association;
>
> (3) Satisfaction of the association's lien;
>
> (4) Satisfaction in the order of priority of any subordinate claim of record; and
>
> (5) Remittance of any excess to the unit's owner.

still reconcilable with the CC&Rs as a whole. Indeed, any other reading would nullify the language in Section 6.18(c)(1). *See Quirrion v. Sherman*, 109 Nev. 62, 65, 846 P.2d 1051, 1053 (1993) ("[W]here two interpretations of a contract provision are possible, a court will prefer the interpretation which gives meaning to both provisions rather than an interpretation which renders one of the provisions meaningless."); *see also Diaz*, 120 Nev. at 73, 84 P.3d at 665-66 ("The rules of construction governing the interpretation of contracts apply to the interpretation of restrictive covenants for real property.").

LNV further argues that applying the holding in *SFR Investments* here would interfere with its vested contractual rights, citing to *Coral Lakes Community Ass'n, Inc. v. Busey Bank, N.A.*, 30 So. 3d 579, 581-84 & n.3 (Fla. Dist. Ct. App. 2010) (holding that a CC&R clause that subordinated the association's lien to the first mortgage's interest controlled over a later-enacted statute that would have interfered with that subordination because the statute came into effect after the CC&Rs and thus would have implicated "constitutional concerns about impairment of vested contractual rights"). This court recognized *Coral Lakes* in *SFR Investments*, and found its concerns did not apply because the CC&Rs at issue, which contained a mortgage savings clause, were recorded after the Legislature adopted NRS Chapter 116 so the respondent bank was aware that the statutory superpriority lien existed and could not be waived per NRS 116.1104. *SFR Invs.*, 130 Nev., Adv. Op. 75, 334 P.3d at 419 & n.7 (recognizing that NRS Chapter 116 prohibited waiver of rights conferred by it unless expressly allowed).

Similarly, LNV's security interest did not come into existence until 2007, well after the 1991 enactment of NRS Chapter 116 and the

1996 recordation of the CIC's CC&Rs;[3] thus, there is no analogous later-enacted statute that might threaten LNV's contractual rights. The priority language in Section 6.18 being interpreted here has remained unchanged in the CC&Rs since their original recordation, and using *SFR Investments* as persuasive authority to interpret that language is not the same as enacting a new statutory rule. And that the NRS Chapter 116 non-waiver provision does not apply to the CIC further proves our point: the drafter of the CC&Rs was not legally obligated to grant the CIC a superpriority lien, but nevertheless did.

We conclude that the district court therefore erred in dismissing the complaint for failure to state a claim upon which relief can be granted. Accordingly, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

---

[3]*See* 1991 Nev. Stat., ch. 245, § 1-128, at 535-79.

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Jerry A. Wiese, District Judge
Law Offices of Michael F. Bohn, Ltd.
Sylvester & Polednak, Ltd.
Lewis Roca Rothgerber LLP/Las Vegas
Eighth District Court Clerk